STATE OF NORTH CAROLINA

COUNTY OF GUILFORD

JUSTIN MYREE,

Plaintiff,

vs.

JANE and/or JOHN DOE, and NORTH
CAROLINA AGRICULTURAL &
TECHNOLOGY STATE UNIVERSITY,

Defendants.

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
25-CVS-

**PLAINTIFF'S COMPLAINT**
(JURY TRIAL DEMANDED)

RECEIVED

FEB 1 3 2025

General Counsel
Office of Legal Affairs

NOW COMES Plaintiff Justin Myree (hereinafter, "Mr. Myree" or "Plaintiff") by and through the undersigned counsel and pursuant to Rule 7 of the North Carolina Rules of Civil Procedure to allege the following:

## THE PARTIES

1. Mr. Myree is a competent adult citizen and is a resident of Guilford County, North Carolina.

2. Upon information and belief, Defendant Jane and/or John Doe is a yet to be identified individual or individuals who (1) initially spread a rumor around the time of the Valentine showcase in February 2024 that Plaintiff Myree had sexually assaulted another individual, and/or (2) anonymously posted on "Sidechat" through use of a North Carolina Agricultural and Technical College electronic email, including but not limited to posts on August 4, 2024, that Plaintiff Myree had sexually assaulted another individual. Upon information and belief, Jane Doe and/or John Doe is an adult, competent female and/or male who, currently and at all times relevant to this action, resides and is domiciled in Guilford County, North Carolina (hereinafter referred to as "Defendant Jane Doe and/or John Doe").

# EXHIBIT B

3. Upon information and belief, Defendant North Carolina Agricultural and Technical College (hereinafter referred to as "Defendant NC A&T") is a constituent institution of the University of North Carolina pursuant to N.C.G.S. §116-4. This institution may be served with process with the Office of Legal Affairs in the Dowdy Administration Building at 1601 E. Market Street, Suite 422 Greensboro, North Carolina 27411.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over this action because the transactions and occurrences leading to the cause of action occurred, in material part, within Guilford County, North Carolina.

5. This Court has personal jurisdiction over Defendant Jane Doe and/or John Doe pursuant to N.C. Gen. Stat. §1-75.4(1)(a) because upon information and belief Defendant Jane Doe and/or John Doe is/are natural person(s) present within the State of North Carolina.

6. This Court has personal jurisdiction over Defendant Jane Doe and/or John Doe pursuant to N.C. Gen. Stat. §1-75.4(1)(b) because upon information and belief Defendant Jane Doe and/or John Doe is/are natural person(s) domiciled within the State of North Carolina.

7. This Court has personal jurisdiction over Defendant NC A&T pursuant to N.C. Gen. Stat. §1-75.4(1)(c) because upon information and belief Defendant NC A&T is a domestic corporation.

8. This Court has personal jurisdiction over Defendant NC A&T pursuant to N.C. Gen. Stat. §1-75.4(1)(d) because upon information and belief Defendant NC A&T is engaged in substantial activity with the State of North Carolina.

9. Venue is properly laid in this Court pursuant to N.C. Gen. Stat. §1-82 because Plaintiff resides within Guilford County, North Carolina.

10. This matter involves an amount in controversy in excess of Twenty-Five Thousand Dollars ($25,000.00), making Superior Court the proper division for this matter.

## STATEMENT OF FACTS
### *(Helpful Background Information)*

11. Mr. Myree is an undergraduate student at the North Carolina Agricultural & Technical State University located in Guilford County, North Carolina.

12. Upon information and belief, Defendant NC A&T is an education institution that receives Title IX federal funds and has students who receive federal student financial aid; therefore, Defendant NC A&T must comply with Title IX of the Education Amendments of 1972 under 28 U.S.C.S. §§ 1681, *et seq.*

13. Title IX of the Education Amendments of 1972 ("Title IX") requires that "No person… shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance […]." 28 U.S.C.S. §§ 1681, *et seq.*

14. Mr. Myree, in addition to excelling in his academics, is also involved in extracurricular activities that develop his acting skills, such as the Theater Valentine's Day showcase that is upon information and belief sponsored by Defendant NC A&T.

15. Mr. Myree takes great pride in honing his acting skills, driven by his aspiration to become a professional actor.

16. Apart from his academics and extracurriculars, Mr. Myree also places great importance on being a mentor on campus, often offering guidance and support to others.

17. It is thus evident that Mr. Myree values his reputation both on and off campus, prioritizing integrity in all aspects of his life.

18. Upon information and belief, Professor Boone is an employee for Defendant NC A&T and teaches acting, movement I & II, and acting styles, which are courses housed within the theater department.

19. Upon information and belief, Defendant NC A&T employs guidelines for its staff and students related to prohibited conduct, titled "Sex and Gender-Based harassment and Discrimination, including Sexual Assault, Domestic Violence, Dating Violence, and Stalking, collectively, 'Sexual harassment' or 'Prohibited Conduct.'" *See* North Carolina A&T State University, Chapter 200- Equal Opportunity & Nondiscrimination, *Interim University Policy 207, Sexual Harassment, Discrimination, & Misconduct* (2020).

20. Upon information and belief, Defendant NC A&T further provides that there are "[c]ertain University individuals and offices [that] are 'Designated Officials" for Title IX purposes." Further, "Designated Officials include:

    (a) Chancellor, Vice Chancellors, Provosts, Deans, and Department Chairs (and their direct reports)

    (b) All Division of Human Resources employees

    (c) All Division of Student Affairs employees

    (d) N.C. A&T State University Police Department staff

    (e) Office of Affirmative Action

    (f) Office of Student Conduct

    (g) Office of Housing and Residential Life

    (h) Athletic Director, Coaches, Assistant Coaches,

    (i) Individuals who directly supervise student workers, faculty, or other staff

    (j) Academic Advisors

(k) Campus Security Authorities under the Clery Act"

*Id.* at Sect. I. ¶ B.

21. Upon information and belief, the University has policies that outline the procedures for Title IX incident that are controlling since Mr. Myree has been a student at the University and during the time period covering Mr. Myree's allegations. *See* N.C. A&T Policies, Title IX & Sexual Harassment 3-C, https://hub.ncat.edu/policies/graduate/title-ix-and-sexual-harassment-3-c.php#:~:text=The%20Title%20IX%20Office%20handles%20sexual%20harassment%20and,at%20educational%20institutions%20that%20receive%20federal%20financial%20assistance (last accessed Oct. 22, 2024, 12:39 P.M. EST).

22. Upon information and belief, the University's Title IX Office "handles sexual harassment and misconduct issues at North Carolina A&T." *Id.*

23. Upon information and belief, Defendant NC A&T instructs its employees "… not to investigate what has been reported to you. An investigation is handled through the Title IX Office." *Id.*[1]

---

[1] Importantly, Defendant NC A&T has policies in place that explains "responsible employees" have a "duty to report incidents of sexual violence or misconduct to the University's Title IX Coordinator or other designated University official." Furthermore, and in relevant part "[i]f you witness such an incident or if a student comes to you for help after an incident follow these steps:
1) Report information immediately:
   - As a Responsible Employee, you are expected to report to the Title IX Coordinator within 24 hours once sexual misconduct has been reported to you.
2) Report ALL available information to Title IX Office:
   - Name of Victim and/or Reporting Party
   - Name of Alleged Person(s) (if known)
   - Date, Time, and Location of Incident
   - Any details regarding the incident […]
3) Ask the victim if he/she would like to contact University Police or Greensboro Police to make a report, even if there are no imminent threats to safety. Victims have a right to pursue a criminal complaint with the police and/or a formal complaint through the university. However, making a report to either does not obligate the victim to file a complaint. […]

24. Upon information and belief, Professor Boone is neither a Title IX Office Coordinator nor a Designated Official at North Carolina A&T.

25. On or around February 18, 2024, Mr. Myree became aware of false statements made against him when informed by a colleague that, upon information and belief, another unnamed individual had communicated to Professor Boone that Mr. Myree had sexually assaulted another student identified as "Nailah."

26. Mr. Myree, distraught by the heinous allegation that he allegedly sexually assaulted another, corrected the misinformation to his colleague and explained that the only encounter he had with "Naliah" was on or around the week before the Theater Valentine's Day showcase, approximately on or around February 6, 2024, when Mr. Myree and "Nailah" shared a consensual kiss.

27. On or around February 19, 2024, Mr. Myree went directly to Professor Boone to get additional details of the false allegations made against him. Professor Boone explained to Mr. Myree that she had communicated directly with Nailah and Nailah confirmed that she was not sexually assaulted by Mr. Myree.

28. Upon information and belief, Professor Boone further stated that she wanted to speak directly to the individual that communicated to her personally that Mr. Myree had sexually assaulted Naliah.

---

[…] Do not start your own investigation." *See* N.C. A&T Policies, Title IX & Sexual Harassment 3-C, https://hub.ncat.edu/policies/graduate/title-ix-and-sexual-harassment-3-c.php#:~:text=The%20Title%20IX%20Office%20handles%20sexual%20harassment%20and,at%20educational%20institutions%20that%20receive%20federal%20financial%20assistance (last accessed Oct. 22, 2024, 12:39 P.M. EST).

29. Upon information and belief, Professor Boone neither made a report to the Title IX Office Coordinator, or the Title IX Office generally, nor to a "Designated Official" when she first heard that Mr. Myree sexually assaulted another student identified as "Nailah."

30. That same day, and in an effort to further clarify and mitigate any potential future harm to his reputation, Mr. Myree spoke to Professor Lucky to express the false statements made against him.

31. Upon information and belief, Professor Lucky is also an employee for Defendant NC A&T.

32. Upon information and belief, Professor Lucky is neither a Title IX Office Coordinator nor a "Designated Official."

33. Upon information and belief, Professor Lucky suggested that Mr. Myree write a statement concerning the situation and send it back to Professor Lucky, and in turn, Professor Lucky would also ask Naliah to do the same.

34. Upon information and belief, Professor Lucky also never made a report to the Title IX Office, Title IX Coordinator, or a "Designated Official" when told that Mr. Myree had sexually assaulted an individual identified as "Nailah."

35. Trusting that Professor Lucky's suggestion was credible given his position at the university and familiarity with the proper protocols, Mr. Myree submitted a written statement to Professor Lucky on or around February 20, 2024, and Professor Lucky responded with "everything would get handled."

36. Mr. Myree believed that addressing the false allegations against him would put an end to the matter; however, he was unaware that the rumor would continue to spread across campus and further permeate into his personal life.

37. A few weeks later, Mr. Myree met with both Professor Boone and Zakiyah, the individual who communicated the false statements to Professor Boone.

38. In that meeting, and upon information and belief, Zaikyah explained that she had overheard the rumor that Mr. Myree sexually assaulted Naliah from another student identified as "Aailiyah." Upon information and belief, Naliah and Aailiyah are mutual friends, and Mr. Myree also mentors Aailiyah.

39. During this meeting with Professor Boone and Zaikyah, Mr. Myree expressed that he wanted to speak to Aailiyah about the rumors and Professor Boone agreed to be present during this meeting.

40. Upon information and belief, and after Professor Boone's class, Professor Boone attempted to approach Aailiyah, but Aailiyah stated that she had other things to do right after class and could not meet.

41. Upon information and belief, and despite holding meetings with Mr. Myree and Zaikyah, Professor Boone still did not make a mandatory reporting to the Title IX Office, Title IX Office Coordinator, or a "Designated Official" despite being required to do so by Defendant NC A&T's policies and procedures.

42. Despite Professor Boone's reassurances, Mr. Myree was unable to meet directly with Aailiyah to gain more information about the false statements made against him.

43. Upon information and belief, no mandatory report was made to the Title IX Office by any of Defendant NC A&T's employees despite the requirement to do so within 24 hours. *See* N.C. A&T Policies, Title IX & Sexual Harassment 3-C, https://hub.ncat.edu/policies/graduate/title-ix-and-sexual-harassment-3-c.php#:~:text=The%20Title%20IX%20Office%20handles%20sexual%20harassment%20

and,at%20educational%20institutions%20that%20receive%20federal%20financial%20as sistance (last accessed Oct. 22, 2024, 12:39 P.M. EST).

44. Upon information and belief, Defendant NC A&T's employees, such as Professor Boone and Professor Lucky, took it upon themselves to conduct their own individual investigation of the alleged sexual assaults despite being given strict instructions to report any "Prohibited Conduct" to the Title IX Office. *See* North Carolina A&T State University, Chapter 200- Equal Opportunity & Nondiscrimination, *Interim University Policy 207, Sexual Harassment, Discrimination, & Misconduct* (2020).

45. As of the date of this filing, no employee for Defendant NC A&T, including Professors Boone and Lucky, made any reports to the Title IX office, nor followed any of the procedures as required by the North Carolina Agricultural & Technology State University institution.

46. Upon information and belief, "Sidechat" is a social media and/or messaging application utilized by students at NC A&T.

47. Upon information and belief, users access "Sidechat" by employing their official NC A&T student electronic mail account to create an account with Sidechat.

48. Upon information and belief, "Sidechat" allows users to post messages and images on its application anonymously. Furthermore, and upon information and belief, there are no usernames associated with any of the accounts on "Sidechat".

49. Upon information and belief, "Sidechat" also permits its users to message each other directly, and comment on posts, all while remaining anonymous to each other.

50. On or about February 29, 2024, UNC System President Peter Hans, in remarks to the UNC Board of Governors, reported that he had "asked [the] legal and IT teams for a plan to block

the most destructive social media apps from the UNC infrastructure," which specifically included Sidechat, noting that the identified apps "turn a blind eye to everything from sexual harassment and racial insults to drug dealing" and are a threat to the emotional health and well-being of students.

51. As of August 2024, Defendant NC A &T had not implemented any plan to block Sidechat from their infrastructure.

52. As of August 2024, Defendant NC A&T did not preclude students, through their handbook, technology, or otherwise, from utilizing a NC A&T email address to establish accounts on Sidechat.

53. On or around August 4, 2024, another friend of Mr. Myree informed him that a post on "Sidechat" was made anonymously stating that Mr. Myree sexually assaulted an individual.

54. Mr. Myree later learned that more posts were being made on "Sidechat" including the following: "*looking at yall covering for that boy in the theatre dept*"; "*No for real like, IF YOU HANG WITH A RAPIST, ASSOCIATE WITH RAPISTS, ESPECIALLY IF THEIR A KNOWN PERPETRATOR FOR MULTIPLE COUNTS OF SEXUAL ASSAULT. I KNOW FOR A FACT THAT 1. You think 'RAPE IS COOL' 2. YOU DONE RAPED SOMEONE YOURSELF*"; "*NCAT theatre department I'm side eyeing so hard rn not yall tryna silence victims and protect the person in the wrong.*"

55. Responsive comments to this post were then made identifying Mr. Myree: "*j\*st\*n*"; "*It's true! He's an awful person and the professors are covering for him and tried to cover it all up bc they didn't want 'bad press' for the program. They know everything ! He tried to deny it all. There's literal PROOF of MULTIPLE victims speaking out ! The department is so SICK*".

56. Separate comments and/or posts continue to further fabricate and embellish the story: "*Crazy part is actually it was actually handled. The girl didn't want to press charges or anything. The department can't do anything atp*"; "*It wasn't actually ! She was coerced by the professors and her peers to change her story*"; "*That's a lie [...] all the professors who attention it was brought to told her to take it to the police*"; "*I promise you , as a person who's been assaulted myself I would NEVER joke around or spread misinformation! You clearly don't know me so please don't speak like you do [...] ATP yall are fine defending this man and honestly I've had it with yall, him, and that [expletive deleted for public filing] department ! I will see if yall really bout it when we get back ! I wanna see yall at the first mandatory meeting of the year [...]*" and "*[...] All I'm saying is you might be wrong in this case. Cuz they tried to get the police involved but she refused it. That's a fact for sure.*"

57. A comment to the aforementioned post also identified Mr. Myree through his personal social media platform: "*what's his @ so i can avoid him*"; "*j_myree*"

58. "*Woah THEATRE DEPARTMENT!!! PROFESSORS ARE HELPING PERPETRATORS AND NOT THE VICTIMS....#AGGIENOPRIDE*".

59. As a result of these posts, Mr. Myree has suffered emotional and mental anguish to the point where he has had to regularly attend therapy to help address his response to the horrific rumors.

60. Mr. Myree is further concerned with his personal safety on campus in light of recent movements across the country such as the "MeToo" movement, where he often fears how others will both perceive him and respond to these false allegations.

61. Upon information and belief, no report by any third party has been submitted to the Title IX Office for Defendant NC A&T regarding any alleged sexual misconduct by Mr. Myree.

Nevertheless, the damage to Mr. Myree's reputation has already been irrevocably done, with the rumor spreading widely across campus.

62. Although Mr. Myree was once filled with excitement as he prepared to close the chapter on his undergraduate career and embark on his future, he is now overwhelmed with concern about the damaging false rumors that threaten to derail his opportunities with his career prospects, where reputation is everything.

## FIRST CLAIM FOR RELIEF
### *(Defamation – Libel Per Se Against Defendant Jane Doe and/or John Doe)*

63. The previous paragraphs are realleged and incorporated by reference.

64. Defendant Jane Doe and/or John Doe wrote and/or caused to be published the false statements referenced herein, and repeated below at some point after and before the filing of this Complaint about Mr. Myree:

    a.  Mr. Myree did in fact sexually assault an individual.

    b.  Mr. Myree confessed to sexually assaulting an individual.

    c.  The Title IX office at NC A&T University is actively investigating Mr. Myree for an alleged sexual assault incident he was involved in.

    d.  Mr. Myree was involved in a rape incident.

    e.  Mr. Myree did in fact rape an individual.

    f.  Mr. Myree confessed to raping an individual.

    g.  There are multiple victims who have been sexually assaulted and/or raped by Mr. Myree.

65. Defendant Jane Doe and/or John Doe published the referenced statements by knowingly communicating and/or causing them to be distributed so that they reached one or more persons other than Mr. Myree.

66. Defendant Jane Doe and/or John Doe's statements about Mr. Myree were false and Defendant Jane Doe and/or John Doe knew them to be false.

67. Defendant Jane Doe and/or John Doe's statements are libelous on their face, in that they allege that Mr. Myree has committed an infamous and immoral crime.

68. No innuendo or explanation is required to understand Defendant Jane Doe and/or John Doe's statements which, when considered alone, allege that Mr. Myree sexually assaulted and/or raped another student.

69. Mr. Myree is a private figure.

70. The subject matter of Defendant Jane Doe and/or John Doe's libelous statements is not a matter of public concern.

71. When Defendant Jane Doe and/or John Doe made these statements, Defendant Jane Doe and/or John Doe knew they were false.

72. Defendant Jane Doe and/or John Doe's allegations that Mr. Myree engaged in sexual assault and/or rape constitutes defamation per se, and Mr. Myree is entitled to a presumption of damage to his reputation and character.

73. Mr. Myree has been damaged as a result of Defendant Jane Doe and/or John Doe's defamatory conduct in an amount in excess of $25,000.00 (twenty-five thousand dollars) to be proven at trial.

## SECOND CLAIM FOR RELIEF
### *(Defamation – Slander Per Se against Defendant Jane Doe and/or John Doe)*

74. The previous paragraphs are realleged and incorporated by reference.

75. Defendant Jane Doe and/or John Doe slandered Mr. Myree by making the following statements:

a. Mr. Myree did in fact sexually assault an individual.

b. Mr. Myree confessed to sexually assaulting an individual.

c. The Title IX office at NC A&T University is actively investigating Mr. Myree for an alleged sexual assault incident he was involved in.

d. Mr. Myree was involved in a rape incident.

e. Mr. Myree did in fact rape an individual.

f. Mr. Myree confessed to raping an individual.

g. There are multiple victims who have been sexually assaulted and/or raped by Mr. Myree.

76. Mr. Myree is a private figure, and the subject matter of the slanderous statements is not a matter of public concern.

77. Defendant Jane Doe and/or John Doe published the statements by knowingly communicating the statements so that they reached one or more persons other than Mr. Myree.

78. Defendant Jane Doe and/or John Doe's statements about Mr. Myree were false.

79. The false statements by Defendant Jane Doe and/or John Doe impeached Mr. Myree in his community.

80. The false statements by Defendant Jane Doe and/or John Doe where she accused Mr. Myree of committing sexual assault and/or rape involves a crime of moral turpitude.

81. Defendant Jane Doe and/or John Doe, at the time of publication, knew the statements were false or failed to exercise ordinary care in order to determine whether the statements were false.

82. Defendant Jane Doe and/or John Doe failed to use that degree of care that a reasonable and prudent person in the same or similar circumstances would have used in order to determine whether the statements were false.

83. Mr. Myree was damaged by Defendant Jane Doe and/or John Doe's defamatory conduct in an amount in excess of $25,000.00 (twenty-five thousand dollars).

### THIRD CLAIM FOR RELIEF
***(Defamation – Libel Per Quod against Defendant Jane Doe and/or John Doe)***

84. The previous paragraphs are realleged and incorporated by reference.

85. Defendant Jane Doe and/or John Doe wrote and/or caused to be published to third persons the false and defamatory statements referenced herein about Mr. Myree:

    a.   Mr. Myree did in fact sexually assault an individual.

    b.   Mr. Myree confessed to sexually assaulting an individual.

    c.   The Title IX office at NC A&T University is actively investigating Mr. Myree for an alleged sexual assault incident he was involved in.

    d.   Mr. Myree was involved in a rape incident.

    e.   Mr. Myree did in fact rape an individual.

    f.   Mr. Myree confessed to raping an individual.

    g.   There are multiple victims who have been sexually assaulted and/or raped by Mr. Myree.

86. Defendant Jane Doe and/or John Doe published the referenced statements by knowingly communicating and/or causing them to be distributed so that they reached one or more persons other than Mr. Myree.

87. Defendant Jane Doe and/or John Doe's statements about Mr. Myree were false, and Defendant Jane Doe and/or John Doe knew or should have known that they were false were it not for Defendant Jane Doe and/or John Doe's reckless disregard for the truth.

88. Defendant Jane Doe and/or John Doe's statements about Mr. Myree are not matters of public concern, and Mr. Myree is a private figure.

89. To the extent Defendant Jane Doe and/or John Doe's statements are not defamatory on their face, or are subject to multiple interpretations, those statements become defamatory when they are considered in connection with innuendo, colloquium and explanatory circumstances as alleged throughout this Complaint.

90. Defendant Jane Doe and/or John Doe's statements about Mr. Myree were understood as defamatory by those who saw those statements, as alleged throughout this Complaint.

91. Defendant Jane Doe and/or John Doe's defamatory conduct was the actual and proximate cause of harm to Mr. Myree.

92. Defendant Jane Doe and/or John Doe acted with actual malice towards Mr. Myree in publishing her false statements with what Mr. Myree can only presume to be Defendant Jane Doe and/or John Doe's frustration with the mismanagement of pursuing sexual assault and/or rape allegations. Therefore, Mr. Myree is entitled to an award of punitive damages.

93. Mr. Myree has suffered special damages including pecuniary loss as a proximate result of Defendant Jane Doe and/or John Doe's defamatory statements, in an amount to be shown and proven at trial.

94. Mr. Myree has been damaged as a result of Defendant Jane Doe and/or John Doe's defamatory conduct in an amount in excess of $25,000.00 (twenty-five thousand dollars) to be proven at trial.

## FOURTH CLAIM FOR RELIEF
### *(Defamation – Slander Per Quod against Defendant Jane Doe and/or John Doe)*

95. The previous paragraphs are realleged and incorporated by reference.

96. Defendant Jane Doe and/or John Doe slandered Mr. Myree by making the following statements:

      a. Mr. Myree did in fact sexually assault an individual.

      b. Mr. Myree confessed to sexually assaulting an individual.

      c. The Title IX office at NC A&T University is actively investigating Mr. Myree for an alleged sexual assault incident he was involved in.

      d. Mr. Myree was involved in a rape incident.

      e. Mr. Myree did in fact rape an individual.

      f. Mr. Myree confessed to raping an individual.

      g. There are multiple victims who have been sexually assaulted and/or raped by Mr. Myree.

97. Defendant Jane Doe and/or John Doe published by knowingly communicating the statements, repeating the statements, caused the statements to be repeated so that it reached one or more persons other than Mr. Myree.

98. Defendant Jane Doe and/or John Doe's statements about Mr. Myree were false.

99. Defendant Jane Doe and/or John Doe intended the statements made that Mr. Myree committed sexual assault and/or rape to be a crime or offense involving moral turpitude.

100. A person other than Mr. Myree to whom the statement was published reasonably understood Defendant Jane Doe and/or John Doe's statements that charged Mr. Myree with having committed sexual assault and/or rape is a crime or offense involving moral turpitude.

101. At the time of the publication, Defendant Jane Doe and/or John Doe either knew the statements made against Mr. Myree were false and/or failed to exercise ordinary care, i.e., that degree of care that a reasonable person in the same or similar circumstances would have used, in order to determine whether the statements made were false.

102. Mr. Myree is a private figure, and the subject matter of Defendant Jane Doe and/or John Doe's statements is not a matter of public concern.

103. Mr. Myree, as a result of Defendant Jane Doe and/or John Doe's publication that he committed sexual assault and/or rape, suffered monetary and/or economic loss in an amount in excess of $25,000.00 (twenty-five thousand dollars).

### FIFTH CLAIM FOR RELIEF
*(Defamation – Libel Per Se Against Defendant NC A&T)*

104. The previous paragraphs are realleged and incorporated by reference.

105. Defendant NC A&T, through the actions of its employees identified as "Professor Boone" and/or "Professor Lucky", pursuant to their professional obligations, were required to report the false allegations against Mr. Myree to be investigated. However, rather than reporting as required, each chose to conduct his/her own individual "investigation" thus spreading the malicious rumor more widely, and preventing it from being properly addressed and/or stopped through appropriate disciplinary action. Upon information and belief, the information shared by Professor Boone and/or Professor Lucky, included the false allegations that:

  a. Mr. Myree did in fact sexually assault an individual.

  b. Mr. Myree confessed to sexually assaulting an individual.

  c. The Title IX office at NC A&T University is actively investigating Mr. Myree for an alleged sexual assault incident he was involved in.

d.  Mr. Myree was involved in a rape incident.

e.  Mr. Myree did in fact rape an individual.

f.  Mr. Myree confessed to raping an individual.

g.  There are multiple victims who have been sexually assaulted and/or raped by Mr. Myree.

106. Defendant NC A&T published the referenced statements by knowingly communicating and/or causing them to be distributed so that they reached one or more persons other than Mr. Myree.

107. Defendant NC A&T's statements about Mr. Myree were false and Defendant NC A&T knew them to be false.

108. Defendant NC A&T's statements are libelous on their face, in that they allege that Mr. Myree has committed an infamous and immoral crime.

109. No innuendo or explanation is required to understand Defendant NC A&T's statements which, when considered alone, allege that Mr. Myree sexually assaulted and/or raped another student.

110. Mr. Myree is a private figure.

111. The subject matter of Defendant NC A&T's libelous statements is not a matter of public concern.

112. When Defendant NC A&T made these statements, Defendant NC A&T knew they were false.

113. Defendant NC A&T's allegations that Mr. Myree engaged in sexual assault and/or rape constitutes defamation per se, and Mr. Myree is entitled to a presumption of damage to his reputation and character.

114. Mr. Myree has been damaged as a result of Defendant NC A&T's defamatory conduct in an amount in excess of $25,000.00 (twenty-five thousand dollars) to be proven at trial.

## SIXTH CLAIM FOR RELIEF
### *(Defamation – Slander Per Se against Defendant NC A&T)*

115. The previous paragraphs are realleged and incorporated by reference.

116. Defendant NC A&T, through the actions of its employees identified as "Professor Boone" and/or "Professor Lucky", pursuant to their professional obligations, were required to report the false allegations against Mr. Myree to be investigated. However, rather than reporting as required, each chose to conduct his/her own individual "investigation" thus spreading the malicious rumor more widely, and preventing it from being properly addressed and/or stopped through appropriate disciplinary action. Upon information and belief, the information shared by Professor Boone and/or Professor Lucky, included the false allegations that:

   a. Mr. Myree did in fact sexually assault an individual.

   b. Mr. Myree confessed to sexually assaulting an individual.

   c. The Title IX office at NC A&T University is actively investigating Mr. Myree for an alleged sexual assault incident he was involved in.

   d. Mr. Myree was involved in a rape incident.

   e. Mr. Myree did in fact rape an individual.

   f. Mr. Myree confessed to raping an individual.

   g. There are multiple victims who have been sexually assaulted and/or raped by Mr. Myree.

117. Mr. Myree is a private figure, and the subject matter of the slanderous statements is not a matter of public concern.

118. Defendant NC A&T published the statements by knowingly communicating the statements so that they reached one or more persons other than Mr. Myree.

119. Defendant NC A&T'S statements about Mr. Myree were false.

120. The false statements by Defendant NC A&T impeached Mr. Myree in his community.

121. The false statements by Defendant NC A&T where it accused Mr. Myree of committing sexual assault and/or rape involves a crime of moral turpitude.

122. Defendant NC A&T, at the time of publication, knew the statements were false or failed to exercise ordinary care in order to determine whether the statements were false.

123. Defendant NC A&T failed to use that degree of care that a reasonable and prudent person in the same or similar circumstances would have used in order to determine whether the statements were false.

124. Mr. Myree was damaged by Defendant NC A&T's defamatory conduct in an amount in excess of $25,000.00 (twenty-five thousand dollars).

## SEVENTH CLAIM FOR RELIEF
### *(Defamation – Libel Per Quod against Defendant NC A&T)*

125. The previous paragraphs are realleged and incorporated by reference.

126. Defendant NC A&T, through the actions of its employees identified as "Professor Boone" and/or "Professor Lucky", pursuant to their professional obligations, were required to report the false allegations against Mr. Myree to be investigated. However, rather than reporting as required, each chose to conduct his/her own individual "investigation" thus spreading the malicious rumor more widely, and preventing it from being properly addressed and/or stopped through appropriate disciplinary action. Upon information and

belief, the information shared by Professor Boone and/or Professor Lucky, included the false allegations that:

    a.  Mr. Myree did in fact sexually assault an individual.

    b.  Mr. Myree confessed to sexually assaulting an individual.

    c.  The Title IX office at NC A&T University is actively investigating Mr. Myree for an alleged sexual assault incident he was involved in.

    d.  Mr. Myree was involved in a rape incident.

    e.  Mr. Myree did in fact rape an individual.

    f.  Mr. Myree confessed to raping an individual.

    g.  There are multiple victims who have been sexually assaulted and/or raped by Mr. Myree.

127. Defendant NC A&T published the referenced statements by knowingly communicating and/or causing them to be distributed so that they reached one or more persons other than Mr. Myree.

128. Defendant NC A&T's statements about Mr. Myree were false, and Defendant NC A&T knew or should have known that they were false were it not for Defendant NC A&T's reckless disregard for the truth.

129. Defendant NC A&T's statements about Mr. Myree are not matters of public concern, and Mr. Myree is a private figure.

130. To the extent Defendant NC A&T's statements are not defamatory on their face, or are subject to multiple interpretations, those statements become defamatory when they are considered in connection with innuendo, colloquium and explanatory circumstances as alleged throughout this Complaint.

131. Defendant NC A&T's statements about Mr. Myree were understood as defamatory by those who saw those statements, as alleged throughout this Complaint.

132. Defendant NC A&T's defamatory conduct was the actual and proximate cause of harm to Mr. Myree.

133. Defendant NC A&T acted with actual malice towards Mr. Myree in publishing her false statements with what Mr. Myree can only presume to be Defendant NC A&T's personal frustration with the mismanagement of pursuing sexual assault and/or rape allegations. Therefore, Mr. Myree is entitled to an award of punitive damages.

134. Mr. Myree has suffered special damages including pecuniary loss as a proximate result of Defendant NC A&T's defamatory statements, in an amount to be shown and proven at trial.

135. Mr. Myree has been damaged as a result of Defendant NC A&T's defamatory conduct in an amount in excess of $25,000.00 (twenty-five thousand dollars) to be proven at trial.

## EIGHTH CLAIM FOR RELIEF
### *(Defamation – Slander Per Quod against Defendant NC A&T)*

136. The previous paragraphs are realleged and incorporated by reference.

137. Defendant NC A&T, through the actions of its employees identified as "Professor Boone" and/or "Professor Lucky", pursuant to their professional obligations, were required to report the false allegations against Mr. Myree to be investigated. However, rather than reporting as required, each chose to conduct his/her own individual "investigation" thus spreading the malicious rumor more widely, and preventing it from being properly addressed and/or stopped through appropriate disciplinary action. Upon information and

belief, the information shared by Professor Boone and/or Professor Lucky, included the false allegations that:

    a.  Mr. Myree did in fact sexually assault an individual.

    b.  Mr. Myree confessed to sexually assaulting an individual.

    c.  The Title IX office at NC A&T University is actively investigating Mr. Myree for an alleged sexual assault incident he was involved in.

    d.  Mr. Myree was involved in a rape incident.

    e.  Mr. Myree did in fact rape an individual.

    f.  Mr. Myree confessed to raping an individual.

    g.  There are multiple victims who have been sexually assaulted and/or raped by Mr. Myree.

138. Defendant NC A&T published by knowingly communicating the statements, repeating the statements, caused the statements to be repeated so that it reached one or more persons other than Mr. Myree.

139. Defendant NC A&T's statements about Mr. Myree were false.

140. Defendant NC A&T intended the statements made that Mr. Myree committed sexual assault and/or rape to be a crime or offense involving moral turpitude.

141. A person other than Mr. Myree to whom the statement was published reasonably understood Defendant NC A&T's statements that charged Mr. Myree with having committed sexual assault and/or rape is a crime or offense involving moral turpitude.

142. At the time of the publication, Defendant NC A&T either knew the statements made against Mr. Myree were false and/or failed to exercise ordinary care, i.e., that degree of

care that a reasonable and person in the same or similar circumstances would have used, in order to determine whether the statements made were false.

143. Mr. Myree is a private figure, and the subject matter of Defendant NC A&T's statements is not a matter of public concern.

144. Mr. Myree, as a result of Defendant NC A&T's publication that he committed sexual assault and/or rape, suffered monetary and/or economic loss in an amount in excess of $25,000.00 (twenty-five thousand dollars).

**NINTH CLAIM FOR RELIEF**
*(Violation of the Title IX of the Education Amendments pursuant to 28 U.S.C. §1681 et seq. against Defendant NC A&T)*

145. The previous paragraphs are realleged and incorporated by reference.

146. Mr. Myree was a student of Defendant NC A&T at the time of the violation of Title IX by Defendant NC A&T.

147. Mr. Myree was subject to harassment based on his sex when information was widely shared across campus that Mr. Myree allegedly sexually assaulted "Nailah".

148. Mr. Myree was subject to harassment based on his sex when Mr. Myree proactively took measures by reporting the false statements to the proper University officials and the statements were improperly shared further.

149. Mr. Myree made two (2) separate reports, one to Professor Boone and another to Professor Lucky, concerning false allegations of sexual assault made against Mr. Myree.

150. Defendant NC A&T had a duty to act in good faith in responding appropriately to any reports of allege sexual assault and/or sexual misconduct.

151. Upon information and belief, Defendant NC A&T did not take the proper measures to comply with Title IX polices and procedures under 28 U.S.C. §1681 *et seq.*

152. Defendant NC A&T did not address and/or inadequately addressed Mr. Myree's report to both Professor Boone and Professor Lucky despite being required to do so by Defendant NC A&T's policies, including but not limited to those referenced above.

153. Defendant NC A&T had actual knowledge of the sex discrimination when Mr. Myree reported the false allegations to Professors Boone and Lucky, Defendant NC A&T's employees.

154. The harassment was sufficiently severe and/or pervasive to create a hostile environment in both Mr. Myree's classes and extracurricular activities.

155. Upon information and belief, Professor Boone and/or Professor Lucky either disregarded and/or had a deliberate indifference to Mr. Myree's reports.

156. There is a basis for imputing liability to Defendant NC A&T because Mr. Myree reported the false statements to Defendant NC A&T's employee(s), Professors Lucky and Boone; therefore, the actions, or lack thereof, of Defendant NC A&T's employees are extensions of actions and/or inactions of Defendant NC A&T.

157. Defendant NC A&T, and its employees, had authority to institute corrective measures to remediate any harm Mr. Myree suffered as a result of the false allegations that Mr. Myree allegedly sexually assaulted Nailah.

158. Mr. Myree has been damaged as a result of Defendant NC A&T's violation of Title IX of the Education Amendments in an amount in excess of $25,000.00 (twenty-five thousand dollars) to be proven at trial.

**TENTH CLAIM FOR RELIEF**
*(Breach of Contract against Defendant NC A&T)*

159. The previous paragraphs are realleged and incorporated by reference.

160. Mr. Myree entered into a valid and enforceable Agreement with Defendant NC A&T as evidenced of Mr. Myree being a current student at North Carolina Agriculture & Technical State University.

161. The Agreement is supported by valid and valuable consideration consisting of monetary compensation by Mr. Myree to Defendant NC A&T, i.e., "attendance cost", in in exchange for Mr. Myree's attendance and eventual conferment of a bachelor's degree, as well as other obligations and duties agreed to by the Parties.

162. The time for Defendant NC A&T to perform a material term of the Agreement came no later than on or around February 18, 2024, when Defendant NC A&T was obligated to comply with its Title IX policies and procedures once it had knowledge of any alleged Title IX report involving Mr. Myree.

163. Defendant NC A&T's failure to perform a material term of the Agreement constitutes a breach of the Agreement.

164. Mr. Myree satisfied each condition precedent to the Agreement by staying enrolled as an active student, consistently paying attendance fees and costs to Defendant NC A&T, and otherwise adhering to Defendant NC A&T's policies to maintain good standing as a student.

165. Mr. Myree further satisfied each condition precedent to the Agreement by following Defendant NC A&T's Title IX procedures and reporting the false allegations made against Mr. Myree to the proper university channels.

166. Mr. Myree has incurred costs and expenses and has suffered damages as a direct and proximate result of Defendant NC A&T's breach of the Agreement in an amount in excess of $25,000.00 (twenty-five thousand dollars) to be shown and proven at trial.

## ELEVENTH CLAIM FOR RELIEF
### *(Punitive Damages pursuant to N.C. Gen. Stat. §1D-1 et. seq. against Defendant Jane Doe and/or John Doe)*

167. The previous paragraphs are realleged and incorporated by reference.

168. Defendant Jane Doe and/or John Doe's wrongful conduct was the proximate and actual cause of compensatory damages suffered by Mr. Myree, in an amount to be shown and proven at trial.

169. Fraud, malice, and willful or wanton conduct were present in Defendant Jane Doe and/or John Doe's conduct set forth throughout this Complaint, and pending ongoing investigation in this matter through discovery, Mr. Myree identifies and lists the following conduct by Defendant Jane Doe and/or John Doe made in the form of false statements made against Mr. Myree:

    a. Mr. Myree did in fact sexually assault an individual.

    b. Mr. Myree confessed to sexually assaulting an individual.

    c. The Title IX office at NC A&T University is actively investigating Mr. Myree for an alleged sexual assault incident he was involved in.

    d. Mr. Myree was involved in a rape incident.

    e. Mr. Myree did in fact rape an individual.

    f. Mr. Myree confessed to raping an individual.

    g. There are multiple victims who have been sexually assaulted and/or raped by Mr. Myree.

170. Defendant Jane Doe and/or John Doe's conduct set forth throughout this Complaint involved the conscious, intentional disregard of and indifference to the rights of Mr. Myree without regard for Mr. Myree.

171. Defendant Jane Doe and/or John Doe's conduct set forth throughout this Complaint was egregious.

172. Defendant Jane Doe and/or John Doe's conduct was not vicarious or performed on behalf of another.

173. Defendant Jane Doe and/or John Doe's conduct and motives were reprehensible in that they were intended to deceive and cause harm to Mr. Myree's character and reputation in the community.

174. Defendant Jane Doe and/or John Doe's wrongful conduct directly and proximately caused injury to Mr. Myree and caused Mr. Myree to incur expenses.

175. Defendant Jane Doe and/or John Doe was aware of and intended the probable consequences of their wrongful conduct.

176. Defendant Jane Doe and/or John Doe knew or should have known that their wrongful conduct was reasonably likely to result in harm, injury, or damage to Mr. Myree.

177. Mr. Myree suffered actual damages as a proximate and direct result of Defendant Jane Doe and/or John Doe's conduct.

178. Upon information and belief, Defendant Jane Doe and/or John Doe is capable of paying punitive damages.

179. Upon information and belief, an award of punitive damages would deter future wrongful conduct like that of Defendant Jane Doe and/or John Doe.

180. Mr. Myree's claim for punitive damages incurred as a result of Defendant Jane Doe and/or John Doe's conduct is in excess of $25,000.00 (twenty-five thousand dollars) with the specific amount to be shown and proven at trial.

**WHEREFORE**, Plaintiff Justin Myree respectfully prays this Honorable Court as follows:

1. Find that Defendant Jane Doe and/or John Doe committed defamation which harmed Plaintiff Justin Myree;

2. Award Plaintiff Justin Myree actual and consequential damages as a result of Defendant Jane Doe and/or John Doe's defamation;

3. Find that Defendant NC A&T committed defamation which harmed Plaintiff Justin Myree;

4. Award Plaintiff Justin Myree actual and consequential damages as a result of Defendant NC A&T's defamation;

5. Find that Defendant NC A&T breached its contract with Plaintiff Justin Myree;

6. Award Plaintiff Justin Myree actual and consequential damages as a result of Defendant NC A&T's breach of contract;

7. Find that Defendant NC A&T violated the Title IX of the Education Amendments pursuant to 28 U.S.C. §1681 *et seq.*;

8. Award Plaintiff Justin Myree actual and consequential damages as a result of Defendant NC A&T's violation of the Title IX of the Education Amendments pursuant to 28 U.S.C. §1681 *et seq.*;

9. Order that Defendant(s) pay Plaintiff Justin Myree's costs and reasonable attorney's fees associated with the present action pursuant to North Carolina law;

10. Award Plaintiff Justin Myree's punitive damages pursuant to N.C. Gen. Stat. §1D-1 *et seq.*; and

11. Grant such further and other relief as the Court deems just and proper.

**[SIGNATURE ON THE NEXT PAGE]**

Respectfully submitted,

This the 5th day of February, 2025.



*Tamara Gomez*

Tamara M. Gomez
Bar No. 60274
Leslie Muse
Bar No. 61195
122 N. McDowell Street
Charlotte, NC 28204
Telephone: (704) 376-4488
Facsimile: (704) 731-0904
Electronic Mail: Muse@PartonNC.com
Gomez@PartonNC.com
*Attorneys for Plaintiff Justin Myree*